# EXHIBIT Y

Order denying Petitioner's motion for appropriate relief as amended

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| COUNTY OF RICHMOND | SUPERIOR COURT DIVISION |
| | FILE NO: 06 CRS 1536 |

FILED
2018 OCT -9
RICHMOND CO., C.S.C.
BY ___ BP

STATE OF NORTH CAROLINA )
)
v. ) ORDER ON MOTION FOR
) APPROPRIATE RELIEF
)
DERRICK JOVAN MCRAE )

**THIS MATTER** came on to be heard before the Honorable W. David Lee, at the June 11, 2018 special session of Richmond County Superior Court upon defendant's amended motion for appropriate relief asserting ineffective assistance of trial counsel, the motion to amend having been filed on or about August 11, 2017; and an evidentiary hearing having been ordered on September 26, 2017; and the State being represented by Assistant Attorney General Nicholaos G. Vlahos, Esq.; and the defendant being present in court and being represented by Jamie T. Lau, Esq. and Theresa Newman, Esq.;

And the Court having conducted an evidentiary hearing on June 11-12, 2018, and the Court having received and reviewed defendant's post-hearing motion to amend to conform the amended motion to the evidence adduced at the hearing, and good cause appearing to allow the motion to conform to the evidence, the Court, in its discretion, allows the amendment which is deemed to encompass those facts not previously encompassed in the motion but facts that nonetheless came before the Court and were admitted at the June evidentiary hearing;

And the Court, having carefully considered and determined the credibility of the witnesses and the weight of the evidence presented, makes the following findings of fact by at least a preponderance of the evidence:

1. George E. Crump, III, Esq. ("Mr. Crump") served as defendant's trial counsel at both the first and second trials of the defendant, the first trial having ended in a hung jury on May 1, 1998, and the second trial having commenced ten days later on May 11, 1998. Mr. Crump's representation of the defendant began more than two years earlier, on or about March 26, 1996.

2. Mr. Crump was licensed to practice in this State in August, 1977 and was, in May 1998, a trial attorney who had then been practicing law for more than twenty years.

3. Prior to the first trial, expending more than one hundred hours in pre-trial preparation, Mr. Crump conducted numerous interviews and consulted extensively with his client. Following interviews of potential witnesses, including members of the defendant's family, utilizing the services of a private investigator in that process, Mr. Crump understood and appreciated his client's claim of actual innocence based upon an alibi defense. Mr. Crump, however, also perceived his client to be a "young man of limited ability who by nature was "not forthcoming," who appeared "withdrawn, a "poor historian" who provided few details. In December, 1996 Mr. Crump, upon proper motion, secured an order committing the defendant to Dorthea Dix Hospital for a determination of competency. Mr. Crump subsequently received opinions from Dr. Nicole F. Wolfe and from Dr. Robert Rollins as appear of record. Both Dr. Wolfe and Dr. Rollins were forensic psychiatrists at Dorthea Dix Hospital.

4. Mr. Crump also obtained and reviewed the defendant's school records, as well as records from the Sandhills Mental Health Center. With respect to the Sandhills Mental Health Center, Mr. Crump, by letter dated February 9, 1998 (Tr., Defendant's Exhibit #5) requested "any and all medical records in your possession as to Derrick McRae." Mr. Crump subsequently received from Sandhills Mental Health Center thirty-two pages of mental health records, including admission/assessment information, diagnostic, treatment and discharge records spanning more than a year and a half of mental health services (May, 1995 to November, 1996). It now appears that Sandhills Mental Health Center failed to provide all of its records as to the defendant. The court record, however, is devoid of facts that could support an inference that Mr. Crump knew or should have known that there were additional

records. Moreover, Mr. Crump also consulted with Dr. William B. Scarborough, a psychologist with whom Mr. Crump had worked in the past, regarding the defendant's mental health.

5. Prior to the first trial, after considering both the insanity and diminished capacity defenses, Mr. Crump, in consultation with his client and after extensive factual and legal investigation, made the strategic choice to pursue the alibi defense rather than either the insanity or diminished capacity defenses. Mr. Crump reasoned that otherwise "(The) message that is being sent to the jury is that the defendant is arguing that he is not guilty, that he did not kill Jerry Rankin, and that he was not present, and yet his lawyer is arguing that he was insane at the time he committed the offense." State's Exhibit #4.

6. During the ten day interval between the first and second trials Mr. Crump was diligent in re-issuing the seven subpoenas for witnesses who had supported and that he reasonably expected to continue to support defendant's alibi defense. As current defense counsel notes, the majority of jurors in the first trial concluded that the defendant was innocent. It is undeniable that this majority reached this conclusion only after a vigorous alibi defense was presented; and further, only after the incidental evidence discussed below had also come before them.

7. The incidental evidence adduced at the first trial reflected that the victim appeared to his mother to be nervous and that someone named Dale "was going to beat the ass out of him." Additionally, evidence adduced included facts regarding a red truck, together with evidence tending to show the limited opportunity of the State's witness, Edward L. Tender ("Tender") to converse with the defendant during a three-week period while both the defendant and Tender were in the Richmond County Jail.

8. Finally, Tender testified at the first trial that the defendant was a book smart black militant who wanted to kill white people (the victim having been white). These were areas of cross-examination by Mr. Crump.

Based upon the foregoing findings of fact the Court makes the following conclusions of law:

1. The Court concludes that the facts do not support an ineffective assistance of counsel claim based on Mr. Crump not having further investigated certain facts during the brief interval afforded him between the first and second trials. To have expended the limited time afforded Mr. Crump between the first and second trials further exploring and investigating tangential facts could have compromised Mr. Crump's well-placed efforts in pursuing what then (and now) appears to have been a most reasonable and proper alibi defense.
2. The Court concludes that the tangential evidence relating both to the red truck and to the witness Tender's limited access and opportunity to speak with the defendant while they were both incarcerated in Richmond County did not dictate that exploring these facts should supplant, on the eve of the second trial, the reasoned and plausible decision to continue to focus on the "I was elsewhere" defense.
3. The Court further concludes that evidence at the first trial that the victim appeared to his mother to be nervous, and that someone named Dale "was going to beat the ass out of him." neither suggests third party guilt likely ascertainable upon further investigation (and provable ten days hence) nor, except conjecturally, that others may have had wanted to harm the victim.
4. The Court further concludes that the evidence adduced at the first trial that the defendant wanted to kill white people (the police, in particular) did not reasonably require that more time be expended in proving the negative, i.e., that the defendant was not a militant intent on killing white people. Indeed, the effective cross examination by Mr. Crump reveals that, even if the jury found Tender's assertion was credible, Richmond County law enforcement officers (not the victim) were at the top of the list. See Tr. 1 T at 124.
5. This Court is not persuaded that the outcome of the second trial was affected by defense counsel's alleged omissions to investigate the additional facts uncovered at the first trial.

> The Court therefore concludes that there is no reasonable probability that, but for Mr. Crump's failure to further investigate the matters raised in the amended motion in the precious little time he had between trials, the result of the second trial would have been different.

6. The Court concludes that the strategic choices made by Mr. Crump after his investigation of law and facts relevant to plausible options, including those choices made before the first trial, between the first and second trials as well as during the second trial, were objectively reasonable. The Court further concludes that defense counsel's actual performance throughout his representation of the defendant did not fall below an objective standard of reasonableness. It cannot be said that the strategic choices were not reasoned and informed choices among possible defenses.

7. The Court concludes that reasonable professional judgment was exercised by Mr. Crump throughout his representation of the defendant. Reasonable professional judgments supported the limitations on investigation of those matters now complained of by the defendant in his amended motion.

8. This Court concludes, based on the totality of the circumstances, that defense counsel conducted an adequate and reasonable investigation of the facts and circumstances before the defendant's first trial, between the first and second trials, and during the second trial.`

9. The Court further concludes that it should decline to second guess counsel's trial strategy.

10. This Court cannot conclude that counsel's representation was constitutionally defective in any regard.

**NOW THEREFORE IT IS ORDERED, ADJUDGED AND DECREED**

that the amended motion for appropriate relief asserting ineffective assistance of trial counsel is DENIED.

Heard in Richmond County June 11-12, 2018 and, with the consent of the parties, signed *nunc pro tunc* this 5th day of October, 2018, with instructions to the Richmond County Clerk of Superior Court upon the filing of this Order to mail/deliver a copy of same to counsel of record, noting the date of such mailing/delivery on the original Order.

This the 5th day of October, 2018.

*[signature]*

W. David Lee, Judge Presiding