IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DERRICK JOVAN MCRAE, )
)
    Petitioner, )
)
v. ) No. 1:21-CV-577-LCB-JLW
)
EDDIE BUFFALOE, )
Secretary, N.C. Dep't of Public Safety, )
)
    Respondent. )

# MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION FOR LEAVE TO CONDUCT DISCOVERY

### 28 U.S.C. § 2254
### HABEAS RULE 6

Petitioner, Derrick Jovan McRae, by and through undersigned counsel, respectfully submits this Brief in support of his Motion for Leave to Conduct Discovery.

### STATEMENT OF THE NATURE OF THE CASE

McRae, a prisoner of the State of North Carolina, asserts his actual innocence and seeks review through the innocence gateway set out in Schlup v. Delo, 513 U.S. 298 (1995). McRae raises several constitutional claims, including that the State violated his constitutional rights by suppressing material evidence that was favorable to his defense. The North Carolina trial court's decision denying relief to McRae was contrary to and an unreasonable application of clearly established federal law and/or was based on an unreasonable determination of facts in light of the evidence presented. See 28 U.S.C. § 2254(d). He now seeks discovery from this Court to present all evidence bearing on his claims.

1

## STATEMENT OF PERTINENT FACTS

In state court proceedings, the State of North Carolina produced discovery as required by North Carolina law. See N.C. Gen. Stat. § 15A-1415(f). But the discovery produced was incomplete. The State did not produce four-and-a-half months' worth of documents from the lead investigative agency, the Rockingham Police Department ("RPD"). Under RPD policy at the time, the file should have been the complete investigative file, and the file indexing indicates that the missing documents existed. (See DE10-16 at 142:3–17.)[1] The RPD investigation file in the District Attorney's Office for Prosecutorial District 21 (the "D.A.'s Office") is missing an identical set of documents.

At the time, RPD procedure required maintaining a master file containing all work product for each case investigated by the RPD. (See DE10-16 at 131:18–24.) After an investigation resulted in an arrest, the complete file would be duplicated, and the copy would be provided to the D.A.'s Office. (See DE10-17 at 45:1–6; see also DE10-17 at 94:13–19.) Despite this standard procedure, RPD initially represented to McRae's post-conviction counsel that it did not possess a master file for its investigation into the death of Jeremy Lee Rankin, for which McRae was wrongfully convicted and remains incarcerated.[2] (See DE10-16 at 140:20 to 141:11.)

---

[1] All citations to the record include the docket number of the cited document and the page number assigned automatically by the ECF system when filing, not the page number on the original document.

[2] McRae was convicted on May 14, 1998 for the murder of Rankin after his second trial. His first trial, only two weeks earlier, ended with a hung jury, with 8 jurors voting for acquittal.

Although McRae's post-conviction counsel eventually obtained the master case file, even the lead detective[3] later testified that, when counsel received the file, it was "just not complete. It's missing a lot of the information that's indexed in it." (DE10-16 at 141:23–24.) He explained that, although certain documents were tabbed and indexed, which meant the file should have contained those documents, "when you turn to the tab[,] there is nothing there." (DE10-16 at 141:18 to 142:17.)

The documents known to be missing cover two windows of time. The first window is the first four-and-a-half months of the RPD's investigation, for which nearly all of the documents are missing from the time between Rankin's death and McRae's arrest. This includes documentation of the crime scene, witness statements, autopsy reports and suspect information. (See DE10-16 at 142:3–17.) The lead detective testified that other suspects were investigated during that time (see DE10-17 at 84:1–15), but the file contains no information about any suspects other than McRae, who it appears did not become a suspect until February 21, 1996.[4] The second window begins the day after McRae's arrest on March 1, 1996, to the time of his trials in April and May 1998. "There's [sic] no records" of any continuing investigation during this time despite

---

[3] Since his involvement in the investigation of McRae, RPD Detective Robert Voorhees surrendered his law enforcement license as part of a plea agreement to avoid prosecution for felony embezzlement. He also admitted guilt as part of that plea agreement to four charges of misdemeanor larceny. See Petitioner's Opposition to Respondent's Motion for Summary Judgment, Exhibit A (Transcript of Plea).

[4] Rankin was discovered deceased on October 14, 1995. The documents provided include investigative records between February 21, 1996 and March 1, 1996, an approximately two-week period. (DE1 at 13.)

3

testimony from the lead detective that the investigation continued after McRae's arrest.[5, 6] (See DE10-17 at 14:19 to 15:1.) Thus, while testimony describes an investigation spanning more than two years, only about two weeks' worth of documents have been produced.

As noted above, the D.A.'s Office copy of the investigative file, which, according to procedure, should have contained the complete file, is missing the same documents. (DE10-17 at 45:1–6; DE10-17 at 94:13–19.) Neither the D.A.'s Office nor the RPD has explained how the same investigative documents have disappeared from <u>both</u> their files.[7]

## LEGAL ARGUMENT

## MCRAE HAS GOOD CAUSE TO CONDUCT DISCOVERY RELATED TO THE MISSING INVESTIGATIVE FILES.

Habeas Rule 6, 28 U.S.C. § 2254, provides that a district court may allow a prisoner discovery in a federal habeas proceeding upon a showing of good cause. A

---

[5] In the days leading up to his death, Rankin committed several crimes and multiple warrants for Rankin's arrest had been issued on the very day he was found dead. (See Hamlet Police Records (DE1-1 at 1–23).) RPD notes indicate that law enforcement originally intended to "look very close at the victim in this case." (Felony Report Excerpt (DE1-27 at 4).) Robert Voorhees testified that RPD investigated Rankin after the completion of the felony report, but that the investigative file was missing documents pertaining to all investigative activity after March 1, 1996. (DE10-17 at 14:19 to 15:1.)

[6] The lone exception is that Edward Tender's statement from March 26, 1996, was provided to McRae at trial after Tender testified on behalf of the State. (DE1-14 at 4.)

[7] Respondent does not contest this point in his Response but may argue that the record does not firmly establish that four-and-a-half months' worth of investigative documents are missing from the D.A.'s Office File. His counsel, however, must acknowledge that the "prosecutorial file" that the Attorney General's Office provided to McRae in post-conviction did not contain the missing documents.

4

petitioner demonstrates good cause for habeas discovery "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." Bracy v. Gramley, 117 S.Ct. 1793, 1799 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300, 89 S.Ct. 1082, 1088–1089 (1969) (decided before the adoption of Rule 6)).

A habeas petitioner need not show that discovery would definitely lead to relief, but need only show "good cause that the evidence sought would lead to relevant evidence regarding his petition." Payne v. Bell, 89 F.Supp.2d 967, 970 (W.D. Tenn. 2000), partially superseded by statute on other grounds; Habeas Rule 6(b). Upon a showing of good cause, discovery is available regardless of whether an evidentiary hearing on the habeas claims has or has not been scheduled. Jones v. Wood, 114 F.3d 1002, 1009 (9th Cir. 1997).

A habeas petitioner overcomes the Antiterrorism and Effective Death Penalty Act's ("AEDPA") one-year statute of limitations if he meets the actual innocence gateway. McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). When considering a gateway claim, "the district court 'must consider all the evidence old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'" Teleguz v. Pearson, 689 F.3d 322, 328 (4th Cir. 2012) (citation omitted) (emphasis in original).

McRae should similarly be afforded discovery to ensure he has access to the full scope of the RPD investigation file, including, but not limited to, all notes, reports, and other investigative materials, regardless of whether they have been stored and labelled as

5

investigative evidence in the case from the time Rankin was found deceased on October 14, 1995 to the time McRae was convicted on May 14, 1998. This access is essential for McRae's actual innocence claim and to pursue additional Brady material that continues to be withheld by the State.[8] Allowing McRae the discovery he seeks would further the interests of justice and fairness, and would allow for a full and fair inquiry into McRae's actual innocence and habeas claims. As the facts described above show, McRae has good cause to believe that discovery will lead to evidence relevant to his actual innocence and Brady claims.

Among other things, the lead detective testified at the state hearing that documentation of the RPD investigation should be in the RPD file, but "there [are] several things . . . that are . . . just completely not there." (DE10-16 at 142:6–7.)

Any claim by the Respondent that the missing evidence does not exist should not bar the discovery requested here, especially where the State of North Carolina has an embarrassing track record of denying the existence of documents that are later discovered and produced. See, e.g., Long v. Hooks, 972 F.3d 442 (4th Cir. 2020) (en banc); Hunt v. Jones No. 5:09-HC-2011-H, 2014 U.S. Dist. LEXIS 184296 (E.D.N.C., Apr. 2, 2014), adopted by No. 5:09-HC-2011-H, 2015 U.S. Dist. LEXIS 88627 (E.D.N.C., July 8, 2015). For example, in Long, the State Bureau of Investigation reported to the state trial

---

[8] Based on the lead detective's testimony, additional material favorable to McRae is more than likely among the missing documents. As described above, the detective testified that other suspects and the victim himself were investigated, but no documents of these investigations have been provided. (DE10-17 at 84:1–15.) Any evidence of alternate suspects is "classic Brady material." Juniper v. Zook, 876 F.3d 551, 570 (4th Cir. 2017) (citation omitted).

court during post-conviction proceedings that "the only evidence [it] found" was a latent shoeprint, while the investigating police department at the same proceeding argued that the district attorney's office reviewed its file and found "nothing . . . of evidentiary value." 972 F.3d at 453. However, these agencies later turned over documents with a trove of exculpatory information.[9] See id. at 454–55 (listing previously hidden exculpatory information). Based on the record showing "extensive suppression of evidence," the United States Court of Appeals for the Fourth Circuit commanded the district court to afford discovery to the petitioner before making a final determination on his actual innocence claim. Id. at 470.

Similarly, in Hunt, the district court permitted the petitioner to engage in additional discovery after "the State represented that files relevant to [petitioner's] claims no longer existed," and, there, the North Carolina Innocence Inquiry Commission subsequently "located a large number of documents that had not previously been provided." 2014 U.S. Dist. LEXIS 184296, at *2–*3.

---

[9] Even in federal habeas litigation, the State has a track record of falsely denying that additional material exists. For example, in this Court in the Long case, the respondent said, "Petitioner has received discovery from . . . the SBI [ ] and has shown no objective evidence warranting a rational belief that any further exculpatory evidence or material exists." Response Brief Opposing Petitioner's Motion for Discovery; DE13 at 1, Long v. Perry, No. 1:16-cv-00539-CCE-LPA (M.D.N.C. July 27, 2016). Yet, it is now known that the SBI had an undisclosed investigative file that it turned over to the Petitioner, Ronnie Long, only after the district court granted a writ of habeas corpus, as part of ongoing civil litigation. See Amended Complaint; DE24 at 61, Long v. City of Concord, et al., No. 5:21-cv-00201-D, (E.D.N.C. June 11, 2021) (explaining that on May 6, 2021, the SBI for the first time produced records and information that should have been provided before Long's 1976 trial and during his years of post-conviction proceedings).

7

The missing documents are undeniably relevant to McRae's Petition. To start, the four-and-a-half months' worth of missing investigative documents before McRae's arrest are almost certainly favorable to him, as no evidence from this period was ever presented during either of his trials.[10] The missing documents contain records from the crucial early stages of the investigation, including information related to the crime scene, witness statements, autopsy reports, and suspects. (See DE10-16 at 142:3–17.) Surely, if that evidence was favorable to the State, the State would have presented the evidence at trial.

More specifically, at minimum, the discovery sought would identify other suspects investigated by the RPD, information which, as the Court knows, is "classic Brady material." Juniper, 876 F.3d at 570 (citation omitted). The lead detective's testimony establishes that the RPD investigated other suspects, but documents related to these investigations are missing. (See DE10-17 at 84:1–15.) An RPD investigator also testified that they investigated Rankin after McRae's arrest, but "[t]here's [sic] no records" of that post-arrest investigation in the RPD file. (See DE10-17 at 14:19 to 15:1.) These documents are likely to identify others who had a motive to harm Rankin.

Finally, the discovery will provide even more reason to question the integrity and quality of the RPD investigation and will support McRae's innocence gateway and merits claims. The State has never provided critical information from the crime scene. This includes any information about neighborhood canvassing to determine precisely when

---

[10] The State would undoubtedly have used any inculpatory information it learned during this four-and-a-half month period, especially at the second trial, after the first jury voted 8-4 in favor of acquittal.

8

Case 1:21-cv-00577-LCB-JLW   Document 14   Filed 01/26/22   Page 8 of 13

Rankin died or whether neighbors saw or heard anything beforehand that would reveal a motive for someone to kill him. Additionally, given the unavailability of an innocent explanation for the absence of documents for the first four-and-a-half months of the active investigation into Rankin's death, the unavoidable inference is that someone intentionally removed the documents. See Long, 972 F.3d at 481 (Wynn, J., concurring) (noting that the clear inference from "vanished" reports is that someone removed them). No doubt, the frequent cause of documents being removed and disappearing is that they are favorable to the defendant—in this case, to McRae. Discovery is needed so that McRae can bring this favorable evidence before this Court.

McRae's case is very similar to Long, which appeared before the Fourth Circuit. See id. There, the Fourth Circuit remanded the case to the district court and commanded that it permit discovery in light of the State's history of suppressing evidence in the case. Id. at 470. McRae's case is even stronger than the petitioner's in Long. Here, like in Long, documents were suppressed. But also here, and unlike in Long, there is sworn testimony from the case's lead detective that the underlying documents should exist. (See DE10-16 at 131:21–24, 142:5–7.)

This Court should grant discovery so that this evidence is finally disclosed, especially since a proper review of the actual innocence gateway requires this Court to review all the evidence. If the full investigation documents cannot be produced as requested, then this Court should permit depositions to discover precisely why the identical investigation documents were excised from the law enforcement and prosecutorial files.

## SPECIFIC DISCOVERY SOUGHT

(1) McRae requests leave to seek production of the missing investigation documents, including, but not limited to, all investigation records, handwritten notes, forensic reports, and any other material collected or produced by the RPD in its investigation of the death of Rankin from the time he was found deceased on October 14, 1995, up to and through the date of McRae's conviction on May 14, 1998.

(2) McRae also requests leave to depose the entities of the RPD and D.A.'s Office regarding their file storage and retention policies at the time of the investigation and prosecution of this case.

(3) If the missing investigation documents described above (the documents spanning the dates of October 14, 1995 to February 21, 1996 and March 1, 1996 to May 14, 1998) cannot be produced, McRae requests leave to depose the following individuals:

    a. Kenneth Honeycutt, elected District Attorney at time of McRae's trial with responsibility over the entire D.A.'s Office and its files.

    b. Scott Brewer, Assistant District Attorney who prosecuted McRae.

    c. W. Reece Saunders, current Richmond County District Attorney with responsibility over the D.A.'s Office's files, including the file related to the prosecution of McRae.

    d. John Doe Officers with the RPD who collectively had access to and maintained the RPD's files from the time of McRae's arrest up to the time of Robert Voorhees's testimony described above that the file was

missing "a lot" of documents. These officers will be identified at the entity deposition requested above.

## CONCLUSION

Based upon the foregoing, McRae respectfully submits that good cause has been shown and that he should be allowed the limited discovery requested by his Motion for Leave to Conduct Discovery.

Respectfully submitted, this the 26 day of January, 2022.

/s/ Jamie T. Lau
Jamie T. Lau (N.C. Bar No. 39842)
James E. Coleman, Jr. (N.C. Bar No. 46900)
Theresa A. Newman (N.C. Bar No. 15865)
Wrongful Convictions Clinic
Duke University School of Law
*jamie.lau@law.duke.edu*
*jcoleman@law.duke.edu*
*newman@law.duke.edu*
Box 90360
Durham, North Carolina 27708
Telephone: (919) 613-7764
Fax: (919) 613-7262

*Counsel for Petitioner*

11

## CERTIFICATE OF WORD COUNT

I hereby certify that this support brief, including the body of the brief, headings and footnotes, but excluding the caption, signature lines, certificate of service, and any cover page or index not included, contains 2,801 words and is in compliance with the 6,250 word limit for support briefs under local rule 7.3(d)(1).

Respectfully submitted, this the 26th day of January, 2022.

/s/ Jamie T. Lau
Jamie T. Lau (N.C. Bar No. 39842)
James E. Coleman, Jr. (N.C. Bar No. 46900)
Theresa A. Newman (N.C. Bar No. 15865)
Wrongful Convictions Clinic
Duke University School of Law
*jamie.lau@law.duke.edu*
*jcoleman@law.duke.edu*
*newman@law.duke.edu*
Box 90360
Durham, North Carolina 27708
Telephone: (919) 613-7764
Fax: (919) 613-7262

*Counsel for Petitioner*

# CERTIFICATE OF SERVICE

I certify that on January 26, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification to the following:

Ms. Kimberly N. Callahan
kcallahan@ncdoj.gov

Mr. Zachary K. Dunn
zdunn@ncdoj.gov

Respectfully submitted, this the 26th day of January, 2022.

/s/ Jamie T. Lau
Jamie T. Lau (N.C. Bar No. 39842)
Wrongful Convictions Clinic
Duke University School of Law
*jamie.lau@law.duke.edu*
Box 90360
Durham, North Carolina 27708
Telephone: (919) 613-7764
Fax: (919) 613-7262

*Counsel for Petitioner*